UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHARLES CHRISTOPHER RUTTER AND DEBORAH
BOYD RUTTER, AS CO-ADMINISTRATORS OF THE
ESTATE OF CHARLES N. RUTTER, DECEASED, and
CHARLES CHRISTOPHER RUTTER, HOLLIE RUTTER
HARRIMAN AND DEBORAH BOYD RUTTER, INDIVIDUALLY
AND AS WRONGFUL DEATH BENEFICIARIES OF
CHARLES NICHOLAS RUTTER                                                                    PLAINTIFFS

V.                                                                   CIVIL ACTION NO. 3:09-CV-680-DPJ-JCS

CONSECO LIFE INSURANCE COMPANY                                                     DEFENDANT

ORDER

        This life-insurance dispute is before the Court on Defendant Conseco Life Insurance

Company's ("Conseco") Motion to Dismiss and Motion for Summary Judgment [36].  The Court

has considered the memoranda and submissions of the parties, along with the applicable law, and

finds that because genuine issues of material fact exist, Conseco's Motion should be denied in

part and granted in part.

I.        FACTS AND PROCEDURAL HISTORY

        Charles N. Rutter began his life-insurance policy with Conseco on October 11, 1999.[1]  In

2009, Rutter fell behind paying his premiums.  The Conseco policy addresses premium payments

and procedures for nonpayment as follows:

        . . . .
        READ YOUR POLICY CAREFULLY
        . . . .
        All payments are subject to all of the provisions of this and following pages of
        this policy signed at its Administrative Offices, Carmel, Indiana.  This policy is
        issued in consideration of the application and payment of the initial premium.

---

        [1] Rutter's Conseco policy was converted from his 1992 policy with Lamar Life Insurance
Company, which merged with Conseco in 1998.

. . . .

POLICY DATA PAGE

. . . .

Based upon the minimum guaranteed interest rates and maximum cost of insurance, this policy will remain in force until September 11, 2020 provided (1) the planned periodic premium is paid each time when due and (2) no changes are made in the policy

. . . .

PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS

. . . .

WHERE PAYABLE

. . . .

After the first premium, all premiums are to be paid to the Company at its Administrative Offices.

. . . .

GRACE PERIOD

If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction.  The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. . . .

. . . .

NONFORFEITURE PROVISION

. . . .

CONTINUATION OF INSURANCE

If you stop paying premiums or you pay insufficient premiums so that the cash surrender value is not sufficient to cover the next monthly deduction, the insurance on all insureds will continue, subject to the Grace Period provision, until the earlier of: 1) Monthly anniversary day on which the cash surrender value will not cover the monthly deduction for the following month; or 2) Maturity date.

. . . .

GENERAL PROVISIONS

. . . .

TERMINATION

This policy will terminate when any one of the following events occur:

. . . .

4.      The grace period ends without payment of the required premiums.

Def.'s Mot. [36] Ex. A, Conseco Life Insurance Policy.

2

When Rutter failed to pay, Conseco mailed a "Grace Notice" dated June 11, 2009, which stated in pertinent part:

> This policy is in the "Grace Period" and will lapse on August 11, 2009, unless the amount due is paid.  Any payment must be received in the Home Office no later than the last day of the Grace Period to ensure coverage.
> . . . .
> A return envelope is enclosed for your convenience.

Def.'s Mot. [36] Ex. B.  On or about July 6, 2009, Conseco mailed another letter to Rutter, containing essentially the same language.  Conseco then terminated Rutter's life insurance coverage on August 11, 2009.  Three days later, on August 14, 2009, Conseco received Rutter's premium payment by check dated August 7, 2009.

Dispute exists as to when the check was mailed.  The envelope containing the check was postmarked August 10, 2009.  But Rutter's personal assistant who mailed the check, Jennifer Greer, stated in an affidavit that she personally deposited the premium check inside the post office in McComb, Mississippi, at approximately 4:00 p.m. on Friday, August 7, 2009.  Greer further stated, "The McComb, Mississippi post office has signs which notify patrons that mail deposited before 5:15 p.m. will be collected for postmark, sorting and mailing on that same date."  Pl.'s Resp. [43] Ex. B.

Six months after Conseco cancelled the policy, Rutter suffered a massive stroke and died. The Rutters have filed suit against Conseco under a breach-of-contract theory for wrongful termination of Rutter's life-insurance policy.  Flowing from the breach-of-contract claim are claims for breach of the duty of good faith, intentional infliction of emotional distress, punitive damages, and wrongful death.

3

Conseco now seeks summary judgment on the breach-of-contract claim, and all derivative claims, arguing its right to terminate Rutter's policy for non-payment. Conseco alternatively moves to dismiss the claims of Charles Christopher Rutter, Hollie Rutter Harriman, and Deborah Boyd Rutter in their individual capacities, for lack of standing to sue on Charles N. Rutter's life insurance contract.

II.      STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The non-moving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence,

4

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

III.    ANALYSIS

A.    Breach-of-Contract Claim

The parties first dispute whether Rutter timely paid his premium.  In *Estate of Beinhauer v. Aetna Casualty & Surety Co.*, the Fifth Circuit stated the applicable law as follows:

> The legal effect of mailing an insurance premium is a contractual matter controlled by the intent of the parties.  When an insurer has invited or acquiesced in payment by mail, and the policy does not otherwise define the term "payment," the insured is protected against forfeiture of coverage by mailing the required premium in time to reach the insurer by the due date.

893 F.2d 782, 786 (5th Cir. 1990) (citations omitted).  In *Beinhauer*, the insured mailed a premium that the insurance company never received.  *Id.*  Finding that Beinhauer's policy "nowhere define[d] the term 'payment' as receipt of the premium," the court concluded that Mrs. Beinhauer's testimonial evidence of mailing the premium "create[d] an issue of material fact because a proper mailing of the check would legally protect Beinhauer against immediate forfeiture of coverage." *Id.*

In *Lynch v. Mississippi Farm Bureau Casualty Insurance Co.*, the Mississippi Court of Appeals approved the *Beinhauer* analysis.  880 So. 2d 1065, 1071 (Miss. App. 2004) *cert. denied* 882 So. 2d 234 (Miss. 2004).  But because it found that "the policy *did* otherwise define what 'payment' meant," the *Lynch* court affirmed summary judgment in the insurer's favor.  *Id.* (emphasis added).  According to *Lynch*, "the mail acceptance rule [as explained in *Beinhauer*]

applies unless the *policy clearly requires actual receipt* and not just mailing."  880 So. 2d at

1069–70 (emphasis added) (reviewing *Stonewall Life Ins. Co. v. Cooke*, 144 So. 217, 224 (Miss.

1932); *Pasco Enter. Inc. v. Southland Ins. Agency*, 408 So. 2d 63, 67–68 (Miss. 1981); *Maenza*,

413 So. 2d 1384, 1385–1389; *State Farm Mut. Auto. Ins. Co. v. Scitz*, 394 So. 2d 1371, 1372–73

(Miss. 1981)).  "Ambiguity in terms is at the risk of the drafter of the policy, namely, the

insurance company." *Id.*, 880 So. 2d at 1070.  There is no dispute that Conseco acquiesced to

payment by mail.  Thus, the salient issue for Conseco's motion is whether the policy clearly

defines the term "payment" as requiring "actual receipt and not just mailing." *Id.*

 The Conseco policy discusses premium payment and non-payment in several sections,

but it never suggests that actual receipt is required.  Thus, based solely on the policy language,

the mail-acceptance rule would apply. *See Beinhauer*, 893 F.2d at 785 (applying mail-

acceptance rule to similar contract language).  Conseco contends, however, that its Grace

Notices to Rutter defined "paid" to require timely receipt at the home office and, pursuant to

*Lynch*, the documents should be read together.   In *Lynch*, the policy stated that premiums must

be "paid by the insured on or before expiration of the current term accepted by the company."

880 So. 2d at 1068.  A subsequent renewal notice then stated that payment "should be *received*

prior to the date due." *Id.* (emphasis added).  The Mississippi Court of Appeals determined that

"[w]hat 'paid' meant" "in the policy is shown on the renewal notice." *Id.* at 1070. The court

concluded that the "language in the policy *and* on the renewal notice provided by Farm Bureau is

that payment was to be in its possession on or before the due date." *Id.* (emphasis added).

 Although decided by an intermediate court of appeals, such opinions are authoritative if

"the supreme court of a state has not spoken to [the] particular issue." *Birmingham Fire Ins. Co.*

*of Pa. v. Winegardner & Hammons, Inc.*, 714 F.2d 548, 550 (5th Cir. 1983).   But *Lynch* is

distinguishable in two ways.   First, the insured in *Lynch* testified that he understood payment

was to be received by the due date.   Thus, the Mississippi Court of Appeals noted that there was

a meeting of the minds on this point.   *Lynch*, 880 So. 2d at 1070.   No such evidence is before the

Court in this case.   Second, *Lynch* does not consider the impact of entire-contract provisions like

the following clause found in the Conseco policy:

> This policy, including any attached riders, and the attached copy of the
> application and any supplemental applications for additional coverage are the
> entire contract.   This policy cannot be changed or any of its provisions waived,
> including any extension of time to pay premiums, except by the President, Vice
> President, Secretary or Assistant Secretary.

Def.'s Mot. [36] Ex. A, Contract 14.

Despite the entire-contract provision, Conseco maintains that the Grace Notice must be

considered with the contract because the policy references such notices.   But the authority

Conseco cites relates to existing documents that are incorporated by reference.   *See, e.g.*, *Galey*

*v. World Mktg. Alliance*, 510 F.3d 529, 532 (5th Cir. 2007) ("Under Mississippi law, if a contract

incorporates another document by reference, then both documents must be read together to give

full effect to the intent of the parties.").   Here, the Grace Notices are merely mentioned in the

policy, their terms are not incorporated by reference.   A leading commentator has explained the

distinction:

> It is elementary that whatever is intended to be made a part of a written
> contract of insurance should be inserted in the policy or be incorporated therein
> by attachment and proper words of reference so that it represents the entire final
> agreement of the parties and is not open to variation by parol in the absence of
> ambiguity, fraud, or mistake.

> . . . [S]tatements in a collateral document do not become a part of the
> contract of insurance unless they are referred to in a sufficiently clear manner to
> indicate that the parties intended to make them a part of the contract.

1A Couch on Insurance § 17:16 (3rd ed. 2009).  Couch likewise observes that when the policy

contains a statutory entire-contract provision, "a reference to another paper is insufficient to

bring it within the contract because the other paper must actually be a physical part of the

contract."  *Id*.  Finally, Couch observes that when policies contain entire-contract provisions,

"nothing can be added to the contract as written, by construction or otherwise, except such terms

as may be imposed upon the parties by operation of law."  *Id*.

Couch is consistent with the Mississippi Supreme Court's analysis in *Prudence Mutual

Casualty Co. v. Switzer*, 175 So. 2d 476 (Miss. 1965).  There, an insured died after applying for a

policy but before the insurer physically delivered the document.  The policy made no reference

to a delivery requirement, but when the insured paid his initial premium, he received a receipt

containing the following provision: "No obligation is incurred by the Company unless said

application is approved by the Company at its Home Office and a contract issued and delivered

during the lifetime and good health of the applicant."  *Id*. at 476.  Like the present case, the

policy contained an entire contract provision.  *Id*.  The Mississippi Supreme Court held, "[I]n

order for the 'delivery in good health' requirement to be valid, such a provision must be

contained in the policy, itself, or attached to the policy as part of the contract of insurance."  *Id*.

The court observed that an "obvious" purpose of requiring an entire-contract provision "was to

require that any agreements or conditions modifying insurer's obligations must be included in

the policy, itself, or attached thereto, and not contained in any collateral agreements or

8

understandings." *Id*. The conditions placed on payment in Conseco's Grace Notice are analogous to the delivery obligations in *Switzer*.

Finally, the mail-acceptance rule essentially governs who bears the risk of loss when premium payments are remitted by mail. *See Beinhauer*, 893 F.2d at 796; *accord Bankers Nat'l Life Ins. Co. v. Cooper*, 268 A.2d 78, 82–83 (N.J. Super. Ct. Ch. Div. 1970) ("Once the insurer requests, authorizes or acquiesces in the use of the mails for remitting premiums, . . . the risk of loss of a duly mailed premium payment is on the [insurer]" (citations omitted)). According to *Beinhauer* and *Lynch*, this allocation of risk is a contractual matter determined by the intent of the parties as set forth in the policy terms. When the policy terms fail to define "payment" as requiring actual receipt of mailed premiums, the risk of loss is allocated to the insurer. *Beinhauer*, 893 F.2d at 786; *Lynch*, 880 So. 2d at 1071. A pre-termination Grace Notice—delivered after the agreed policy—is an invalid, unilateral re-allocation of the risk of loss.

In sum, the Conseco Grace Notice defining "payment" cannot override the terms of the policy. Thus, the mail-acceptance rule applies. *Beinhauer*, 893 F.2d at 786 (cited in *Lynch*, 880 So. 2d at 1071). And whether Rutter mailed the required premium in time to reach Conseco by the due date is a question of fact for the jury. Conseco's Motion to Dismiss the breach-of-contract claim is denied.

B.     Other Claims

Conseco has moved to dismiss the claims of Charles Christopher Rutter, Hollie Rutter Harriman, and Deborah Boyd Rutter in their individual capacities on the grounds that they have no personal stake in the outcome of the subject life-insurance contract to which they were neither

9

parties nor beneficiaries.  The Rutters apparently concede the issue, having failed to address it in their Response [43].  Accordingly, the claims of Charles Christopher Rutter, Hollie Rutter Harriman, and Deborah Boyd Rutter in their individual capacities are hereby dismissed.

Finally, Conseco seeks dismissal of the remaining causes of action claiming that they are derivative of the breach-of-contract claim.  Because genuine issues of material fact exist as to the breach-of-contract claim, Rutters' remaining claims—including claims for bad faith, breach of the duty of good faith and fair dealing, intentional infliction of emotion distress, punitive damages, and wrongful death—likewise withstand Conseco's motion.

IV.   CONCLUSION

Based on the foregoing, the Court finds that the claims of Charles Christopher Rutter, Hollie Rutter Harriman, and Deborah Boyd Rutter in their individual capacities are without merit.  They are hereby dismissed.  But because genuine issues of material fact still exist as to whether Rutter timely mailed his premium, Conseco's Motion [36] is denied as to all remaining claims.  The parties are directed to contact the magistrate judge to enter a new scheduling order.

**SO ORDERED AND ADJUDGED** this the 24th day of June, 2011.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE