UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHARLES CHRISTOPHER RUTTER AND DEBORAH BOYD RUTTER, AS CO-ADMINISTRATORS OF THE ESTATE OF CHARLES N. RUTTER, DECEASED, and CHARLES CHRISTOPHER RUTTER, HOLLIE RUTTER HARRIMAN AND DEBORAH BOYD RUTTER, INDIVIDUALLY AND AS WRONGFUL DEATH BENEFICIARIES OF CHARLES NICHOLAS RUTTER — PLAINTIFFS

V. — CIVIL ACTION NO. 3:09-CV-680-DPJ-FKB

CONSECO LIFE INSURANCE COMPANY — DEFENDANT

ORDER

This insurance dispute is before the Court on Defendant Conseco Life Insurance Company's ("Conseco") Motion for Summary Judgment [76]. The Court has considered the parties' memoranda and submissions, along with the applicable law, and finds that genuine disputes of material fact preclude summary judgment on the breach-of-contract claims, that the motion should be denied as to intentional infliction of emotional distress, but that summary judgment should be granted on the bad-faith claim.

I. Facts and Procedural History

Charles N. Rutter began his life-insurance policy with Conseco on October 11, 1999.[1] Ten years later, in 2009, Rutter fell behind paying his premiums. The Conseco policy addresses premium payments and procedures for nonpayment as follows:

[1] Rutter's Conseco policy was converted from his 1992 policy with Lamar Life Insurance Company, which merged with Conseco in 1998.

. . . .
READ YOUR POLICY CAREFULLY
. . . .
All payments are subject to all of the provisions of this and following pages of this policy signed at its Administrative Offices, Carmel, Indiana. This policy is issued in consideration of the application and payment of the initial premium.
. . . .
POLICY DATA PAGE
. . . .
Based upon the minimum guaranteed interest rates and maximum cost of insurance, this policy will remain in force until September 11, 2020 provided (1) the planned periodic premium is paid each time when due and (2) no changes are made in the policy
. . . .
PREMIUM PAYMENTS, GRACE PERIOD AND REINSTATEMENT PROVISIONS
. . . .
WHERE PAYABLE
. . . .
After the first premium, all premiums are to be paid to the Company at its Administrative Offices.
. . . .
GRACE PERIOD
If the cash surrender value on a monthly anniversary day will not cover the next monthly deduction, a grace period of 61 days from such monthly anniversary day will be allowed to pay a premium that will cover the monthly deduction. The Company will send a written notice 30 days before the end of the grace period to the owner's last address shown in the Company's records and to any assignee of record if the premium is not previously paid. . . .
. . . .
NONFORFEITURE PROVISION
. . . .
CONTINUATION OF INSURANCE
If you stop paying premiums or you pay insufficient premiums so that the cash surrender value is not sufficient to cover the next monthly deduction, the insurance on all insureds will continue, subject to the Grace Period provision, until the earlier of: 1) Monthly anniversary day on which the cash surrender value will not cover the monthly deduction for the following month; or 2) Maturity date.
. . . .
GENERAL PROVISIONS
. . . .
TERMINATION
This policy will terminate when any one of the following events occur:

. . . .

4. The grace period ends without payment of the required premiums.

Def.'s Mot. [36] Ex. A, Conseco Life Insurance Policy.

When Rutter failed to pay, Conseco mailed a "Grace Notice" dated June 11, 2009, which stated in pertinent part:

> This policy is in the "Grace Period" and will lapse on August 11, 2009, unless the amount due is paid. Any payment must be received in the Home Office no later than the last day of the Grace Period to ensure coverage.
>
> . . . .
>
> A return envelope is enclosed for your convenience.

Def.'s Mot. [36] Ex. B. On or about July 6, 2009, Conseco mailed another letter to Rutter, containing essentially the same language. Conseco then terminated Rutter's life-insurance coverage on August 11, 2009.

Conseco eventually received an envelope containing a check for Rutter's premiums. The check was dated August 7, but a dispute exists as to when the check was mailed and received. Rutter's personal assistant who mailed the check, Jennifer Greer, stated in an affidavit that she personally deposited the premium check inside the post office in McComb, Mississippi, at approximately 4:00 p.m. on Friday, August 7, 2009. Greer further stated: "The McComb, Mississippi post office has signs which notify patrons that mail deposited before 5:15 p.m. will be collected for postmark, sorting and mailing on that same date." Pl.'s Resp. [43] Ex. B. Despite that, the envelope holding the check was postmarked in Jackson, Mississippi, on August 10, and it now bears a stamp from Conseco stating: "RECEIVED AUG 14 2009."

Six months after Conseco cancelled the policy, Rutter suffered a massive stroke and died. The Rutters filed suit against Conseco under a breach-of-contract theory for wrongful termination of Rutter's life-insurance policy. Flowing from the breach-of-contract claim are claims for breach of the duty of good faith, intentional infliction of emotional distress, and bad faith.[2] Conseco filed an initial motion for summary judgment, which was denied, and now submits a second motion seeking dismissal of all claims. Plaintiffs have responded in opposition. The Court, as explained below, finds that the motion should be granted in part and denied in part.

II. Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The non-moving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*,

[2] Plaintiffs conceded to dismissal of their wrongful-death claim.

276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

III. Analysis

A. Breach-of-Contract Claim

The parties dispute whether Rutter timely paid his premium. In *Estate of Beinhauer v. Aetna Casualty & Surety Co.*, the Fifth Circuit stated the applicable law as follows:

> The legal effect of mailing an insurance premium is a contractual matter controlled by the intent of the parties. When an insurer has invited or acquiesced in payment by mail, and the policy does not otherwise define the term "payment," the insured is protected against forfeiture of coverage by mailing the required premium *in time to reach the insurer by the due date*.

893 F.2d 782, 786 (5th Cir. 1990) (citations omitted and emphasis added). In its earlier Order [49], the Court found that the mail-acceptance rule applies and then found a question of fact whether Rutter mailed the required premium in time to reach Conseco by the due date.

In its present motion for summary judgment, Conseco argues that the Court should not credit Greer's testimony that she mailed the premium on August 7, 2009. Conseco insists that Rutter or his agent mailed the payment on August 10, which was not a sufficient amount of time for the payment to reach Conseco in advance of the August 11 due date. Conseco points to the August 10 postmark on the envelope, testimony by Postmaster Kevin Vicknair that first class mail should arrive at its destination within three to five days, and the fact that the payment was

marked received by Conseco on August 14. Certainly Conseco's evidence conflicts with Greer's affidavit and deposition testimony that she mailed the payment on August 7, 2009, but the Court may "not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. 150. Summary judgment on the breach-of-contract claim is not appropriate.[3]

B. Other Claims Stemming from Breach of Contract

1. Derivative Claims Theory

Conseco also seeks dismissal of Plaintiffs' extra-contractual claims for bad faith, breach of the duty of good faith and fair dealing, and intentional infliction of emotional distress, arguing first that they are derivative of the unsuccessful breach-of-contract claim. Because genuine dispute exists as to the breach-of-contract claim, this argument is rejected.

2. Bad Faith and Punitive Damages

Conseco's original summary-judgment motion offered a limited bad-faith argument, contending that the claim is derivative of a flawed claim for breach of contract. The Court rejected that argument as it does today. But Conseco's latest motion goes further, challenging Plaintiffs' bad-faith claim on the merits. According to Conseco, the bad-faith claim must be dismissed because it had an arguable basis to deny the claim and did not act with malice or gross negligence.

---

[3]Conseco also attached a letter from Charles N. Rutter to the Mississippi Department of Insurance, in which he claimed that he had mailed the premium payment the morning of August 7, 2009. Conseco argues that this letter contradicts Greer's testimony. In their surreply [88], Plaintiffs challenge the admissibility of the letter on hearsay grounds. Regardless, summary judgment should be denied. If Conseco attempts to use the letter at trial and Plaintiffs choose to object, the Court will then consider the parties' arguments as to admissibility.

The Fifth Circuit Court of Appeals neatly summarized the test for determining whether bad faith should be presented to the jury under Mississippi substantive law.

> "In insurance contract cases, the trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issues of punitive damages." *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 185 (Miss. 1994) (internal quotations omitted). If, upon reviewing all the evidence, the district court concludes that the insurer acted in bad faith, or that reasonable minds could differ regarding whether the insurer acted in bad faith, then the district court should send the issue of punitive damages to the jury. *Id*. at 185–86. . . .
>
> [Insureds] bear the burden of proving that [the insurer] acted in bad faith when it denied their insurance claim. *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487 at 492 (5th Cir. 1992).
>
> Section 11-1-65(1)(a) of the Mississippi Code Annotated states that "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Mississippi law does not permit parties to recover punitive damages unless they first prove that they are entitled to compensatory damages. Miss. Code Ann. § 11-1-65(1)(b)-(c); *Sobley v. S. Natural Gas Co.*, 302 F.3d 325 at 330 (5th Cir. 2002).
>
> To recover punitive damages for bad faith denial of their insurance claim, the [insured] "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Wigginton*, 964 F.2d at 492. [The insurer] on the other hand, "need only show that it had reasonable justifications, either in fact or in law, to deny payment." The question of whether [the insurer] had an arguable basis for denying the . . . claim "is an issue of law for the court." *Id*.

*Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627–28 (5th Cir. 2008) (full cites added). Plaintiffs fail to demonstrate either prong of the test.

Starting with the arguable-basis prong, the Mississippi Supreme Court has defined an arguable basis as "nothing more than an expression indicating the act or acts of the alleged

tortfeasor do not rise to [the] heightened level of an independent tort." *Windmon v. Marshall*, 926 So. 2d 867, 873 (Miss. 2006) (citing *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992)). And "the plaintiff bears a heavy burden in demonstrating to the trial court that there was no reasonably arguable basis for denying the claim." *Id.* at 872 (Miss. 2006) (citing *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 844 (Miss. 1984)).

Here, there is no dispute that (1) Conseco notified the insured that the grace period would expire on August 11, 2009; (2) Rutter's payment had to travel from Mississippi to Indiana; (3) the envelope containing payment was postmarked in Jackson, Mississippi, one day before it was due in Indiana; and (4) the envelope now reflects a "RECEIVED" stamp dated August 14, 2009, three days after payment was due.[4] These facts provide an arguable basis for denying the claim. Plaintiffs argue, however, that the "RECEIVED" stamp is not reliable because notes from Conseco's call logs indicate payment on August 18. Pls.' Resp. [80], Ex. F.[5] Plaintiffs contend that these notations—suggesting receipt *after* August 14—cast doubt on the accuracy of the "RECEIVED" stamp dated August 14. Thus, the argument continues, Conseco may well have received the premiums on another date, perhaps *before* August 14, and even as early as the August 11 due date. Though no record evidence indicates receipt by August 11, Plaintiffs conclude that receipt by that date would eliminate the arguable basis for denying the claim—assuming Conseco actually knew it received the premiums on time.

---

[4]Though Plaintiffs claim the envelope was mailed earlier and possibly mishandled by the postal service, there is no indication Conseco was aware of those issues, and there is no dispute that the envelope was postmarked in Mississippi the day before it was due in Indiana.

[5]The Court was unable to locate the second note in the record, but its absence is inconsequential and would not change the Court's conclusion.

These presumptions fail to meet the applicable standard. Conjecture and speculation are not sufficient to create a triable issue. *TIG Ins. Co.*, 276 F.3d at 759. And in this instance, Plaintiffs' argument relies on several layers of speculation to conclude that Conseco knew it received the payment on August 11 in Indiana, one day after the envelope was postmarked in Mississippi. Whether an arguable basis existed "is an issue of law for the court." *Wigginton*, 964 F.2d at 492. Based on this record, the Court concludes that Conseco had an arguable basis to deny the claim.

Even assuming the absence of an arguable basis, Plaintiffs must still show Conseco acted "with malice or gross negligence in disregard of the insured's rights." *Id.* To constitute malice or gross negligence, "[t]he wrong complained of must not be an 'ordinary tort' such as could be 'the produce of forgetfulness, oversight or the like,' but must be more in the nature of 'heightened' tort evincing 'gross, callous or wanton conduct, or . . . accompanied by fraud and deceit.'" *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988) (quoting *State Farm Fire & Cas. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985)); *see also Guy v. Commonwealth Life Ins. Co.*, 894 F.2d 1407, 1413 (5th Cir. 1990) (noting that a deficient investigation or a clerical mistake which results in denial of a claim is not sufficient to establish malice or gross negligence).

Plaintiffs attempt to meet this standard with the same evidence and arguments regarding the call logs. The arguments fail for two reasons. First, there is still no evidence the premiums arrived by August 11. Second, even if they did arrive then, there is no evidence Conseco knew about it and acted with a level of intent beyond clerical error, oversight, or simple negligence. That is, there is no evidence of malice or gross negligence. In sum, Plaintiffs have not met their

burden, and Conseco's motion for summary judgment as to the bad-faith and punitive-damages claims is granted.

3. Emotional Distress

Finally, Conseco seeks summary judgment on Plaintiffs' claim that Charles N. Rutter suffered emotional distress following the cancellation of his life-insurance policy. It remains unclear, however, whether Conseco seeks dismissal of emotional-distress damages resulting from the alleged breach of contract verses damages associated with Plaintiffs' separate claim for intentional infliction of emotional distress (IIED). Pls.' Third Amend. Compl. [35] Count 3. There is a difference.

Plaintiffs may recover emotional distress damages for breach of contract "in the absence of a finding of a separate independent intentional tort." *Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 172 (Miss. 2004). To do so, they must show that mental anguish was a foreseeable consequence of the breach and that they actually suffered mental anguish. *Id.* "Plaintiffs may recover such damages without proof of a physical manifestation," and "expert testimony showing actual harm . . . is not always required," but generalizations such as "'it made me feel bad, or 'it upset me' are not sufficient." *Id.* (citations omitted). Instead, "[a] plaintiff must show specific suffering during a specific time frame." *Id.*

Separate, independent claims for IIED are different. As summarized by the Mississippi Supreme Court in *Gamble ex rel. Gamble v. Dollar Gen. Corp.*:

> Where there are claims involving only sleeplessness, mental anguish, and humiliation, compensatory damages can be awarded based "on the nature of the incident from which the damages flow." *Whitten v. Cox*, 799 So. 2d 1, 10–11 (Miss. 2000). . . . "If there is outrageous conduct, no injury is required for the recovery of infliction of emotional distress or mental anguish." *Morrison v.*

> *Means*, 680 So. 2d 803, 806 (Miss. 1996) (citing *Leaf River Prods. Inc. v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995)). The plaintiff does not have to present further proof of injury. The nature of the act itself, rather than the seriousness of the consequences, can justify an award for compensatory damages. *Sears Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981).

852 So. 2d 5, 11 (Miss. 2003) (en banc) (full citations added). Thus, "in Mississippi, the focus on a claim for intentional infliction of emotional distress is not on the plaintiff's emotional condition; rather, it is centered on the defendant's conduct." *Perkins v. Wal-Mart Stores, Inc.*, 46 So. 3d 839, 847–48 (Miss. Ct. App. 2010) (citation and quotation omitted).

In the present case, the parties focus their arguments on Rutter's emotional condition rather than Conseco's conduct. Indeed, all of the cases Conseco cites address breach of contract or negligent infliction. Def.'s Reply [85] at 10 (citing *Williams*, 891 So. 2d at 172; *Finkelberg v. Luckett*, 608 So. 2d 1214, 1221 (Miss. 1992); *Strickland v. Rossini*, 589 So. 2d 1268, 1275 (Miss. 1991); *Greer v. Burkhardt*, 58 F.3d 1070, 1073–74 (5th Cir. 1995)). It therefore appears that the motion addresses extracontractual damages for emotional distress from the alleged breach rather than Plaintiffs' IIED claim. Though the Court could be mistaken in its interpretation of the motion, the arguments presented appear insufficient to evaluate the IIED claim, and the motion is therefore denied.[6]

---

[6]The Court questions whether extracontractual damages are available given the finding that Conseco had an arguable basis for denying the claim. *Compare United Servs. Auto. Ass'n (USSA) v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010) ("Extracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate 'an arguable, good-faith basis for denial of a claim.") *with Williams*, 891 So. 2d at 172 (allowing emotional distress damages for breach of contract). This issue will be addressed with the parties.

IV. Conclusion

Because genuine issues of material fact persist as to whether Rutter timely mailed his premium, Conseco's motion is denied as to the breach-of-contract claim as well as the claim for breach of the duty of good faith and fair dealing. The motion is also denied as to the IIED claim. Summary judgment is granted as to Plaintiffs' claims for bad faith and punitive damages.

This case is set for pretrial conference on February 8, 2013 (time to be determined) and for trial during the two-week term beginning March 4, 2013. A certain trial date will be set at the pretrial conference.[7] In addition, the parties are to contact the magistrate judge to schedule a settlement conference, preferably in advance of the February 8 pretrial conference.

**SO ORDERED AND ADJUDGED** this the 4th day of January, 2013.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

[7] If the parties have a conflict with the pretrial and trial setting, they should contact Courtroom Deputy Shone Powell to schedule a telephonic status conference with the undersigned.